## *In re* NEW BRUNSWICK CARPET CO., Bankrupt.

(*District Court, D. New Jersey.*  October 25, 1880.)

1. BANKRUPTCY ACT, § 5081 — CLAIM — MISTAKE.—Section 5081 of the bankrupt act provides that the court "shall reject all claims not duly proved, or where the proof shows the claim to be grounded in fraud, illegality, or mistake." *Held,* in construing this clause, that, in the absence of fraud, it was competent for the court to correct any mere mistake, and to allow the proof to stand for any sum that, upon examination, was found to be actually due.

2. EVIDENCE—CHECK.—A check is no evidence of a loan of money from the drawee to the drawer.
   *Fletcher* v. *Manning,* 12 M. & W. 571.

3. SAME—MORTGAGES.—Certain void mortgages *held* evidence, in this case, of the amount of an indebtedness of a bankrupt debtor.

In Bankruptcy.   On petition to expunge claim of the State Bank of New Brunswick.

*R. Wayne Parker,* for assignee.

*A. V. Schenck,* for state bank.

NIXON, D. J.   On the fourth day of March, 1874, the State Bank of New Brunswick, by G. R. Conover, cashier, filed a proof of debt against the above-named bankrupt corporation, amounting, in the aggregate, to $667,351.75, being the balance alleged to be due to the creditor corporation for moneys paid at the request of the bankrupt on certain checks, notes, and acceptances made and given by the carpet company to the bank, and including the sum of $6,458.63 for interest from August 30, 1873, to October 22, 1873.   On the twenty-sixth of June, 1876, Elias W. Miller, assignee of the bankrupt corporation, presented to the court a petition setting forth, in substance, that the claimant had improperly charged to the New Brunswick Carpet Company items of indebtedness aggregating $198,444.32, which were not chargeable against the bankrupt, and not sustained by the exhibits and vouchers submitted in support of the claim; and had omitted and not included in said proof of debt and statement accompanying the same a number of items, amounting to $638,843.95, for which the bankrupt should have been credited in its dealings

and transactions with the creditor; and praying that the proof of debt might be disallowed and expunged from the list of claims filed with the assignee.

An answer to the petition was filed by the bank on the seventh of August following, and thereupon a reference was made, by consent, to William Patterson, Esq., a United States commissioner, for the taking of testimony. A large amount has been taken, of extraordinary character, exhibiting such gross irregularities in the method of transacting business by the principal officers of the respective corporations that it is doubtful whether the parties themselves would be able to determine with any accuracy how the accounts stand between them; much less can strangers, however anxious to arrive at the truth, come to any satisfactory conclusion.

In the proof of debt, as originally filed, the claimants charged the bankrupt corporation with the sum of $2,105,-043.21 as the gross sum alleged to have been furnished by the bank to the carpet company during the years 1872–3, and they credited the bankrupt with $1,444,150.08 as the amount that had been paid during the same time—charging that the difference between these sums was the amount remaining due to the bank on the thirtieth day of August, 1873.

The assignee, in his petition, insists that the exhibits and vouchers accompanying the claim do not substantiate it, but, on the other hand, that the charge of $2,105,043.21 is $198,444.32 in excess of the sum properly chargeable against the company; and that $1,444,150.08 is $638,-803.95 less than the real amount for which the company should be credited in its dealings and transactions with the bank. It is the province of the witnesses and the duty of the court, from the testimony, to reconcile, if possible, these widely-conflicting claims. There is no difficulty about the principle which should govern the court in determining the case. These corporations are to be held responsible for the acts of their officers so long as they are within the line of the business entrusted to them. But when they use their official position merely as a cloak for their personal ends,—both parties knowing that the respective corporations can have no

interest and derive none from their irregular transactions,— the moneys advanced or paid, on the one side or on the other, are not properly chargeable to the institutions which the dishonest officials represent. Expert accountants have been employed by both parties. It is to be lamented that the expert for the assignee died before the court could derive any benefit from his investigation of the transaction in controversy.

On the other hand, the expert of the bank has testified so fully, and given such plausible reasons for his opinions, that the claimants seem quite disposed to rest their claim upon his testimony alone.

On the argument the learned counsel for the assignee insisted—

1. That by the provisions of section 5081 of the bankrupt act the whole claim should be rejected.

The reason assigned was that the proof of claim, as originally filed, contained items which the claimants subsequently acknowledged were a mistake, and the section provides that the court "shall reject all claims not duly proved, or where the proof shows the claim to be grounded in fraud, illegality, or mistake." The phraseology of the section is strong, and doubtless authorizes the court to reject the claim on any of the grounds stated. But I have always, in practice, construed the clause to mean that, in the absence of fraud, it was competent for the court to correct any mere mistake, and to allow the proof to stand for any sum that, upon examination, was found to be actually due.

It was further insisted by him—

2. That, in the absence of proof to the contrary, the payment of checks by a bank was always presumptive that the drawer had funds deposited for their payment.

This proposition will hardly be controverted. It is well settled that the mere paying and holding a check is no evidence of a loan of money by the drawee to the drawer, because the legal presumption is that such payment is only a return of funds which had been before deposited by the drawer. Story on Prom. Notes, 641; Parsons on Bills, 83; *Fletcher*

v. *Manning*, 12 M. & W. 571; *Lancaster Bank* v. *Woodward*, 18 Pa. St. 361; *Bunting* v. *Allen*, 3 Har. (N. J.) 300.

The case of *Fletcher* v. *Manning*, *supra*, was a proceeding in bankruptcy, and is directly in point. In proof of the petitioning creditor's debt, checks were produced by the creditor, and a clerk was called who testified that when the checks were paid by the banker the bankrupt's account was largely overdrawn. But the court said the proof did not go far enough, and held that a check presented and paid was no evidence of money lent or advanced by the banker to the customer; that, on the contrary, it was *prima facie* evidence of the repayment, to the amount of the check, by the banker to the customer of money previously lodged by the customer in the banker's hands.

When it is claimed that a check has been paid without funds antecedently deposited to meet it, the burden is upon the payee to show it, and no implied promise is raised to redeem the check until the fact is clearly proved. In the present case the claim of the bank is founded upon alleged overdrafts by the carpet company, and a large number of checks is brought forward by the bank to establish such allegations. The law casts upon the claimant the burden of showing it by satisfactory evidence. How is it attempted to be done? By the production of the checks, and by the account of the bankrupts with the bank, as it appears upon the books of the respective parties. But in view of the peculiar relations which the cashier of the bank and the president of the carpet company sustained towards each other, and in view of the weight of the testimony that the books were subject to their control and manipulation, and do not reveal the real transactions of the parties, I am unwilling to admit to proof any claim supported by any such evidence. I have great respect for the evident candor, honesty, and good intentions of the expert witness Burke, who has given so much labor to unravelling the tangled thread of the dealings of these men. He has probably done as well as any one could do with the material he had to work with, but it is quite clear that the accounts on which he mainly relies for his conclu-

sions are not to be trusted, and that entries were made to conceal, rather than to show, the actual transactions of the officers of the respective companies. Under these circumstances I am satisfied that it is safer for the ends of justice, and better for the rights of the creditors of the two bankrupt corporations, that I should allow matters to stand as I find them, than to transfer from one to the other so large a sum of money upon such unreliable evidence.

But whilst I have this difficulty in regard to the allowance of the claim as proved, there are facts exhibited which convince me that the carpet company is largely the debtor of the claimants. When it was put into bankruptcy the bank was the holder of two mortgages that it had received from the company—one for a little less than $100,000, being a mortgage that one I. T. Rowand had given to the carpet company upon lands in Pennsylvania, to secure the payment of certain promissory notes that he had made on the purchase from the company of $100,000 worth of its capital stock, and which had been assigned to the bank as collateral security for the payment of the said Rowand's notes, which the bank had discounted for the company; and the other, a mortgage executed by the carpet company to the bank on its real estate, fixtures, and machinery in New Brunswick, in pursuance of a resolution of the board of directors passed September 2, 1873, and given to secure the payment of other notes which the bank had discounted for and was holding against the company. As both of these mortgages had been received by the bank within four months of the filing of the petition of bankruptcy against the debtor company, and were taken to secure antecedent debts, at a time when the creditors had reasonable cause to believe that the company was insolvent, the authorities of the bank surrendered them to the assignee in bankruptcy, as they were advised they were required to do before they could prove their claim. Is not such action on the part of the managers of the carpet company a clear confession of indebtedness, at least to the amount of these mortgages, and does it not afford a safer ground to stand upon than any evidence of books of account,

which had been made the vehicles of false information by the acts of dishonest offiicials? That is my judgment. The proof of claim, as made, must be rejected; but the receiver of the bank will be allowed to make proof for the amount of the Rowand notes which was held by the institution at the surrender of the Rowand mortgage, and which had been discounted for the carpet company, and also for the principal of the mortgage executed by the company to the bank in pursuance of the resolution of the second of September, 1873.